IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MASS ENGINEERED DESIGN, INC., And JERRY MOSCOVITCH, | § § § | |
| Plaintiffs, Counter - defendants, Cross-claimants, | § § § | CASE NO. 2:06 CV 272 PATENT CASE |
| vs. | § § | |
| ERGOTRON, INC., *et. al.*, | § § | |
| Defendants, Counterclaimants | § § | |
| and | § § | |
| DELL MARKETING L.P., | § § § | |
| Intervenor - Defendant, Counterclaimant | § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Ergotron Inc.'s Second Motion to Compel Discovery (Docket No. 366). Having considered the parties' written submissions and oral arguments, the Court **GRANTS** the motion in part.

**BACKGROUND**

Jerry Moscovitch ("Moscovitch") and Mass Engineered Design, Inc. ("Mass") filed this action on July 7, 2006 seeking damages against Ergotron, Inc. ("Ergotron") and several other companies for alleged infringement of U.S. patent number RE 36,978 ("'978 patent"). Moscovitch is Mass's principle and the inventor listed on the '978 patent. Mass is the exclusive licensee to the patent.

1

In early 1996, Moscovitch retained Mirek Waraksa, a Canadian attorney and U.S. patent agent, to prosecute patents in both the U.S. and Canada for "Dual Display Systems." Waraksa filed a U.S. patent application on April 26, 1996, and U.S. patent number 5,687,939 ("'939 patent") issued on November 18, 1997. Shortly after the '939 patent issued, Moscovitch discovered that several key features of his invention were not included within the scope of the '939 patent application. Thereafter Moscovitch sought additional counsel and his relationship with Waraksa quickly degraded. Through other counsel, Moscovtich sought reissue of the '939 patent in order to better represent the original scope of his invention. The '939 patent was subsequently reissued as the '978 patent on December 5, 2000.

After this litigation was commenced Ergotron sought to compel discovery for certain confidential communications between Moscovitch and Waraksa that had been disclosed to the U.S. patent office in connection with the reissue application. Ergotron argued that privilege had been waived[1] as to these communications because they were no longer confidential. On March 19, 2008 this Court granted Ergotron's motion to compel and held that privilege was waived as to "all issues relating to claim scope believed available" up to the date of the reissue.

After the March 19th order, Ergotron noticed Waraksa's deposition. In response, Mass immediately sent a letter to Waraksa warning him not to speak to Ergotron without the presence of Mass's counsel. Ergotron's Motion Ex. 6. The letter cautioned Waraksa that Mass would "inform[] the appropriate authorities" for any ex parte communications Waraksa had with Ergotron where

---

[1] It is significant that Ergotron's first Motion to Compel assumed that privilege existed between Moscovitch and Waraksa while it argues in this Motion that no privilege existed at all. Ergotron attempts to explain this discrepancy by arguing that it only recently became aware that Waraksa was not a U.S. attorney. However, Ergotron was at least on inquiry notice that Waraksa was not a U.S. attorney as early as December 5, 2007 when Moscovitch filed a declaration with this Court proclaiming that Waraksa was registered as a non-resident patent agent.

privileged information was revealed. *Id.* Mass then sent a letter to Waraksa instructing him that, under Canadian law, he was unable to attend the scheduled deposition without express instructions by a Canadian court or by Mass. After a meet-and-confer with Ergotron, Mass granted permission for Waraksa to attend the deposition. During the deposition Mass's counsel repeatedly instructed Waraksa not to answer questions concerning communications he had with Moscovitch about the possibility of Waraksa filing a divisional application for certain features not included within the '939 patent.

Ergotron now seeks to compel discovery of unredacted copies of several documents all submitted by Mass for *in camera* inspection. Ergotron further requests all documents relating to a potential negligence action against Waraksa and moves for sanctions against Mass for Mass's conduct before and during Waraksa's deposition. For the reasons set forth below, Ergotron's motion to compel is **GRANTED** in part, and its motion for sanctions is **DENIED**.

## APPLICABLE LAW AND ANALYSIS

Ergotron requests eleven classes of documents (*In camera* Exs. A-K) arguing that a) they are not privileged for various reasons or b) privilege has already been deemed waived by this Court's March 19th order. Each of these documents and Ergotron's corresponding arguments will be addressed in turn.

*Privileged Communications to Waraksa*

Ergotron requests a letter from Waraksa to Moscovitch concerning the '939 patent *(In Camera* Ex. B) arguing that no communications between Waraksa and Moscovitch are privileged because, at the time of the communication, Waraksa was not licenced to practice law in the U.S.

Since jurisdiction in this case is based on a federal question under 28 U.S.C. § 1338(a),

3

federal common law governs any assertions of privilege. FED. R. EVID. 501. As this Court has recently articulated, attorney-client privilege will apply to a communication only if: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.*, 251 F.R.D. 238, 243-44 (E.D. Tex. March 27, 2008) (Davis, J.) (citing *Myers v. City of Highland Village*, 212 F.R.D. 324, 326 (E.D.Tex.2003) (Davis, J.)).

The application of the privilege in a particular case is a fact sensitive inquiry and addressed on a case-by-case basis. *Upjohn Co. v. U.S.*, 449 U.S. 383, 396-97 (1981). In all cases, the privilege will be applied in light of the applicable principles of common law tempered with both reason and experience. *Id.* (quoting FED. R. EVID. 501). The attorney-client privilege is rooted in the unique relationship between a lawyer and her client. *Id.* at 390. The long-recognized purpose of protecting this class of information is to facilitate full and complete communication between attorney and client. *Id.* at 389. Therefore, when analyzing the privilege a client's expectations concerning confidentiality will often play a strong role in its application. *Id.* at 393 ("[T]he attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.").

Here, Waraksa was employed for his unique dual-role as both Canadian attorney and U.S. patent agent for the purposes of securing similar patents in both the U.S. and Canada. Ergotron argues that, for the purposes of prosecuting a U.S. patent, communications between Moscovitch and Waraksa were merely intended to be communications between a client and a U.S. patent agent. Mass urges that, for all cases, foreign lawyers are "attorneys" for the purposes of asserting privilege in the U.S. Neither of these arguments provides a comprehensive account of the relationship between Moscovitch and Waraksa.

Moscovitch is a Canadian citizen. At the time of the communications at issue here, he and Waraksa had an ongoing relationship whereby Waraksa would prosecute patents for Moscovitch's inventions in both countries. During the hearing, Ergotron's counsel explained that Waraksa's correspondence letterhead names him as both a Canadian attorney and a U.S. patent agent. As a Canadian attorney, Waraksa was held to similar standards of loyalty and confidentiality that apply to U.S. attorneys.[2] *Blank v. Canada (Department of Justice)*, 2 S.C.R. 319 (Can. 2007).[3] Moscovitch relied on that duty on the several occasions that Waraksa was engaged to prosecute his bi-national patents. These facts lead only to the conclusion that Waraksa's role as attorney and patent agent was inseverable within the contours of his relationship with Moscovitch and Mass.

---

[2] Mass has filed an opinion letter from a Canadian law firm, *in camera*, in order to establish the scope of the Canadian "solicitor-client privilege." The Court is satisfied that Waraksa was bound by the privilege as a Canadian attorney during all relevant communications with Mass and Moscovitch and that Waraksa was under a Canadian duty *not* to disclosed privileged information except upon request of his client or by order of a Canadian court.

[3] "[The solicitor-client privilege] recognizes that the justice system depends for its vitality on full, free and frank communication between those who need legal advice and those who are best able to provide it. Society has entrusted to lawyers the task of advancing their clients' cases with the skill and expertise available only to those who are trained in the law. They alone can discharge these duties effectively, but only if those who depend on them for counsel may consult with them in confidence. The resulting confidential relationship between solicitor and client is a necessary and essential condition of the effective administration of justice."

Ergotron narrowly focuses on Waraksa's knowledge that he was filing a U.S. patent application and that any information solicited from Moscovitch was for that purpose. However, the vast majority of these communications were instructive, not only for the U.S. patent process, but for the Canadian patent process as well. Additionally, all of these communications were privileged in Canada. Ergotron would require Waraksa and Moscovitch to have parceled their communications into those relevant to only U.S. patents and those relevant to Canadian patents, with no account for communications with dual applicability. The uncertainty inherent in Ergotron's framework eviscerates the purpose of the privilege and would require guesswork and endless speculation on the part of both foreign attorney and client. To apply the privilege in this manner, after the fact, would serve only an injustice contrary to the reason and experience of the Court. *See SmithKline Beecham Corp. v. Apotex Corp*, No. 98 C 3952, 2000 WL 1310668 at *3 (N.D. Ill. September 13, 2000) (reasoning that blindly denying privilege to foreign patent agents "without reference to either the function they serve in their native system or the expectations created under their local law" would "vitiate the principles of comity and predictability of the privilege").[4]

Conversely, Mass's formulation is overly broad. Certainly not every communication between any client and foreign attorney will be entitled to the privilege in U.S. courts. To the contrary, a client cannot reasonably expect that any foreign legal professional advising on U.S. law will trigger the privilege because they are neither licensed in the U.S. nor are they necessarily held to the same standards of confidentiality and loyalty as U.S. attorneys. However, because Waraksa, as a Canadian

---

[4] While the Court recognizes the split in authority among the district courts over the applicability of the privilege to domestic patent agents and foreign legal professionals, because of the unique circumstances in this case the Court finds no occasion to adopt a "test" to govern either of these categories. These cases are cited not for the frameworks they adopted, but rather for their reasoning that is both compelling and instructive when confronted with these unique facts.

attorney, had a clear duty of confidentiality and was licensed to prosecute patents in the U.S., it was entirely reasonable for Moscovitch and Mass to assume that their communications would be privileged. Therefore, none of the traditional rationales for limiting the privilege as it applies to foreign legal practitioners and patent attorneys are inherent in the Waraksa-Moscovitch relationship. *See, e.g.*, *Status Time Corp. v. Sharp Electronics* Corp., 95 F.R.D. 27, 33 (D.C.N.Y. 1982) (holding foreign patent agents were not entitled to the privilege "because the necessity for 'unrestricted and unbounded confidence' between a client and his attorney which justifies the uniquely restrictive attorney-client privilege simply does not exist . . ."); *Agfa Corp. v. Creo Prods., Inc.*, No. 00-10836-GAO, 2002 WL 1787534 at *2 (D. Mass. August 1, 2002) (holding that extending the privilege to non-lawyer professionals ignores "the special role that lawyers have, by dint of their qualifications and license, to give legal advice")

For these reasons, the privilege extends to communications between Moscovitch and Waraksa as a matter of both comity and out of a necessity for the privilege to align with clients' reasonable expectations concerning the confidentiality of their communications with counsel. *Rice v. Honeywell Intern., Inc*, No. 6:05cv330, 2007 WL 865687 at *2 (E.D. Tex. 2007) (Love, J.) (citing *In re Auclair*, 961 F.2d 65, 70 (5th Cir.1992)) (holding that privileged communications are made "under circumstances so that the communication was reasonably expected and understood to be confidential").

*Communications Between Co-counsel*

Ergotron next requests two documents representing communications between various attorneys Mass retained subsequent to Waraksa (*In camera* Exs. E, G). Ergotron argues that documents transmitted between attorneys from the same firm or attorneys from different firms

7

representing Mass are not covered by attorney-client privilege. Ergotron cites no authority for this proposition.

To the contrary, both communications within a firm and among firms representing the same client are protected by the attorney-client privilege to the extent that they are prepared from confidential information from the client. *See Natta v. Zletz*, 418 F.2d 633, 637 n.3 (7th Cir. 1969) ("[I]nsofar as inter-attorney communications or an attorney's notes contain information which would otherwise be privileged as communications to him from a client, that information should be entitled to the same degree of protection from disclosure. To hold otherwise merely penalizes those attorneys who write or consult with additional counsel representing the same client for the same purpose. As such it would make a mockery of both the privilege and the realities of current legal assistance."); *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 481 (E.D. Pa. 2005); *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 36 (D. Md. 1974). *But see In re D. H. Overmyer Telecasting Co., Inc.*, 470 F. Supp. 1250, 1255 (D.C.N.Y. 1979) (holding co-counsel communication not privileged when they are not a product of communications between a client and her attorney). The documents requested by Ergotron are all prepared from information obtained from Mass or Moscovitch. The attorney-client privilege applies to all redacted portions.

*Scope of the Court's March 19, 2008 Waiver Order*

Ergotron next requests several documents that constitute communications between Mass and its various attorneys[5] (*In camera* Exs. A, C, D, F, H, I, J). Ergotron argues with respect to these

---

[5] Several of these documents are draft documents circulated between Mass and its attorneys. Ergotron mischaracterizes many of the documents as communications with their intended final recipient, rather than communications between Mass and its attorneys. In fact, at the hearing Ergotron argued, for the first time, that draft documents are per se unprivileged because they are not intended to be confidential. To the contrary, all draft documents confidentially communicated to an attorney for the purposes of revision are privileged. *See Macario v. Pratt & Whitney Canada, Inc.*, No. 90-3906, 1991 WL 6117 at *1 (E.D. Pa. 1991).

8

documents and, exhibits B and E addressed above, that even if the documents are privileged, many of the redacted portions fell within the this Court's March 19, 2008 order.[6] The scope of that waiver was held to be all "issues relating to claim scope believed available" by Moscovitch and Mass up to December 5, 2000. *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 206 CV 272, 2008 WL 744705 at *1-2 (E.D. Tex. March 19, 2008) (Davis, J.). After reviewing the documents *in camera*, most of the redacted portions do not fall under the scope of the Court's waiver Order. However, there are exceptions which are noted on Appendix A to this opinion. Those portions, noted on Exhibit A, fall within the Court's previous waiver Order and must be produced.

*Attorney Invoices*

Ergotron requests four separate invoices from Waraksa and one invoice from Mass's subsequent attorneys at Miller Thomson (*In camera* Ex. K). Ergotron argues that attorney invoices are not covered by the attorney-client or work product privileges. It is true that attorney invoices are usually not within the scope of the attorney-client privilege. *In re Grand Jury Subpeona*, 926 F.2d 1423, 1431 (5th Cir. 1991). However, when confidential communications are inextricably intertwined with billing information, then that information remains privileged. *Id.* However, while the content of an attorney-client communication is privileged, the fact that the communication occurred is not. *See ReedHycalog*, 251 F.R.D. at 244 (Davis, J.). Therefore, any invoice information that falls within the scope of the privilege must contain more than the fact of a communication and reveal the communication's topic or content.

---

[6] Several of the documents at issue were documented on Mass's privilege log prior to the January 28, 2008 hearing on Ergotron's First Motion to Compel. However, these documents only appeared on Mass's updated privilege log on January 24, 2008, two business days before the hearing. Therefore, the log was not produced with sufficient time for Ergotron to review the documents and include them in their First Motion to Compel. Accordingly, the Court reviews the applicability of the March 19 waiver as to all the documents.

After *in camera* inspection of the invoices, none of the Waraksa invoices contain either the topic or content of confidential communications. Therefore, the remainder of those invoices must be produced without redaction. The August 21, 2008 invoice from Miller Thomson contains many instances where the topic and content of communications with Mass are revealed. Therefore, much of the document is privileged. However, the invoice is prepared using headings announcing the general topics of the individualized entries. Some of these headings are redacted, others are not. In many instances when the headings are read together with the individualized entries, the document clearly contains privileged information. Where the headings are redacted, the individualized entries are privileged insofar as they reference–and are read together with–the readacted topic headings. Where the topic headings are unredacted, only those individualized entries that contain privileged information above and beyond the topic headings remain privileged. Therefore, where Mass revealed the topic headings, it cannot complain that the individualized entries, when read alone, contain privileged information. Accordingly, on pages one and two, the headings are revealed and therefore, the following redacted portions do not contain privileged content and must be produced: on page one, the entirety of the entry for 05/08/98, and the first entry for 03/16/98; on page two, the entirety of the entries for 04/21/98, 04/28/98, 05/15/98, 07/07/98 and the second entry for 06/03/98. The headings on pages three and four are redacted and thus, when these pages are read together, they contain privileged information and may remain redacted. The heading on page 5 is unredacted, however several of the individual entries contain summaries of actual conversations with Mass. These entries remain privileged, however the entirety of the entries for 03/02/98, 03/03/98, and 03/04/98 do not contain any privileged communication and must be produced without redaction.

*Waraksa Negligence Documents*

Ergotron requests dozens of documents related to a potential negligence action against Waraksa. They argue that since the Court's March 19 order required disclosure of a single document from Waraksa to Mass detailing "conversations that occurred during the '939 patent application process," that all documents related to the negligence action fall under the privilege waiver. Mass has assured the Court, both in its briefs and several times during the hearing, that all documents related to the March 19 waiver have been produced. Mass further asserts that the documents that Ergotron now requests are communications between Mass and its attorneys in anticipation of litigation, and therefore, constitute attorney work product. The very nature of the these documents supports Mass. Additionally, Ergotron has advanced no argument concerning how the remainder of these documents have any inherent relation to the one document expressly covered by the March 19 order, nor have they identified any documents they are requesting specifically. Based on these deficiencies, Ergotron's request for these documents is denied. *See* FED. R. CIV. PROC. 26(b)(1), 26(b)(3)(A), 34(b)(1)(A).

*Sanctions*

Finally, Ergotron moves for sanctions for Mass' alleged "threatening" conduct. Rule 30(b)(2) gives courts discretion to impose sanctions for "imped[ing], delay[ing], or frustrat[ing] the fair examination of [a] deponent." Ergotron argues that the several "threatening" letters Mass sent to Waraksa along with the several occasions during Waraksa's deposition where he was instructed not to answer constituted sanctionable conduct.

Mass's conduct does not warrant any sanction. As has been previously discussed, communications between Mass and Waraksa were privileged. Further, Waraksa was under a duty not to disclose the privileged information without consent from his former client or a Canadian court.

Counsel for Mass were entirely within their rights, let alone their duty, to protect the privileged information known by Waraksa. *See* FED. R. CIV. PROC. 30(d)(2).

Waraksa's relationship with Mass has become strained in the years since his representation of Mass and over the course of this litigation. This has led to Waraksa's increasing tendency to identify more with Ergotron during this litigation. For example, Waraksa invited Ergotron's attorneys to his apartment to discuss his deposition testimony without the presence of Mass's counsel and was paid by Ergotron for the time spent in his deposition. *See* Mass's Response to Ergotron's Motion to Compel Ex. 2 at 118-19; Ex. 11-13; Ex. 14; Ex. 15. Specifically, Ergotron complains that Mass impeded its deposition of Waraksa concerning discussions with Moscovitch over a possible divisional application. *See* Mass's Response Ex. 12. It is troublesome that despite this Court's clear declaration that privileged communications concerning any possible divisional application was not within the scope of the March 19 privilege waiver Order, *Mass*, 2008 WL 744705 at *2 n.1 (Davis, J.), Ergotron continued to elicit, both directly and indirectly, information concerning these discussions. *See* Mass's Response Ex. 12. The Court reminds Ergotron of its ethical duty to respect the legal rights and privileges of its adversaries while conducting discovery. *See* MODEL RULES OF PROF'L CONDUCT R. 3.4(c); 4.4(a); 8.4(c). Ergotron's request for sanctions is denied.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Ergotron's Motion to Compel and **ORDERS** Mass to produce those portions of *in camera* exhibits A-J specified in Appendix A to this opinion as well as those portions of *in camera* exhibit K specified above without redaction. The Court **DENIES** Ergotron's motion with respect to documents relating to a possible negligence action against Waraksa. The Court further **DENIES** Ergotron's motion for sanctions.

**So ORDERED and SIGNED this 14th day of October, 2008.**



_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**

## Appendix A

| Exhibit Letter | Portions Where Privilege is Waived | Reasoning |
|---|---|---|
| A | First Document: Paragraphs 2, and the first two sentences of paragraph 5.<br><br>Second Document: Paragraph 2, and the first two sentences of paragraph 5. | All of these relate to claim scope believed available. Though a separate divisional application may have been sought for these features, these paragraphs do not discuss the divisional application. |
| B | In the third paragraph: "The two approaches . . . broad integrating claim." | Falls under claim scope believed available. |
| C | In the second paragraph: "From previous work . . .approximately 22°-28°."<br>In the fourth paragraph: "The feature . . . for installation." | Falls under claim scope believed available. |
| D | In the fourth paragraph: "From previous work . . . of approximately 22°-28°."<br>In the fourth paragraph: "The feature of . . . and for installation." | Falls under claim scope believed available. |
| E | In the second paragraph: "In reviewing the sole . . . the screens selective positioning means."<br><br>All of the third paragraph from "In reviewing the . . . terminal-peripheral unit-display." | Falls under claim scope believed available. |
| F | None | No portion falls under claim scope believed available. |
| G | None | No portion falls under claim scope believed available. |
| H | None | No portion falls under claim scope believed available. |
| I | None | No portion falls under claim scope believed available. |
| J | None | No portion falls under claim scope believed available. |