# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| MASS ENGINEERED DESIGN, INC., And JERRY MOSCOVITCH, | CASE NO: 2-06CV-272 (LED) |
| Plaintiffs, Counter-defendants, Cross-claimants, | JURY TRIAL DEMANDED |
| v. | |
| ERGOTRON, DELL, CDW CORPORATION, TECH DATA CORPORATION, CSAV, INC., BRETFORD MANUFACTURING, INC. | |
| Defendants, Counterclaimants, | |
| CDW CORPORATION, | |
| Counterclaimant and Third-Party Plaintiff, | |
| and | |
| A.B. DISTRIBUTING, INC. D&H DISTRIBUTING COMPANY, EIZO NANO TECHNOLOGIES INC., INGRAM MICRO INC., INTERNATIONAL AUDIO VISUAL INC., SYNNEX CORPORATION, TECH DATA CORPORATION, CSAV, INC., GLOBAL MARKETING PARTNERS, INC., SEA LAND, INC., PEERLESS INDUSTRIES, INC., DOUBLESIGHT DISPLAYS, LLC AND BRETFORD MANUFACTURING, INC. | |
| Third-Party Defendants. | |

**DEFENDANTS ERGOTRON, CDW, AND TECH DATA'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

## INTRODUCTION

Plaintiffs' response to Defendants' motion fails to present any material facts defeating Defendants' for summary judgment request. Rather, Plaintiffs' argument is based on a misapplication of patent law relating to apparatus claims, and one piece of circumstantial evidence. These arguments do not create genuine issues of material facts, and do not support Plaintiffs' claims for infringement. Therefore, the Court should grant Defendants' motion for summary judgment in its entirety.

## ARGUMENT

**I.    PLAINTIFFS CONCEDE DEFENDANTS ARE NOT LIABLE FOR INDIRECT INFRINGEMENT PRIOR TO THEIR KNOWLEDGE OF THE '978 PATENT.**

Plaintiffs admit that liability for indirect infringement requires that the alleged infringer had knowledge of the patent-in-suit. Plaintiffs' Brief at 9. Plaintiffs also acknowledge that there is no evidence in the record that CDW or Tech Data knew of the '978 patent prior to the time they were served with the Complaint in this litigation, and that there is no evidence in the record that Ergotron knew of the '978 patent prior to May 25, 2001. *Id*.

Faced with the reality that there is no issue of material fact with respect to Defendants' knowledge, Plaintiffs claim that actual knowledge is unnecessary for two reasons: (1) Defendants directly infringe, and (2) Plaintiffs marked their product. *Id*. At 10. These arguments are meritless. First, as set forth below and in Defendants' initial briefing, Defendants do not directly infringe. Regardless, even if Defendants did directly infringe, which they do not, that would not impact the knowledge requirement for indirect infringement. Second, Plaintiffs cite to no case, because there are none, holding that marking provides sufficient knowledge of the patent for indirect infringement. Marking is only relevant to a patentee's ability to recover damages for infringement. *See* 35 U.S.C. § 287.

Accordingly, the undisputed relevant facts support the grant of summary judgment precluding CDW and Tech Data from liability for indirect infringement prior to the dates they were served, and precluding Ergotron from liability for indirect infringement prior to May 25, 2001.

## II.   DEFENDANTS DO NOT DIRECTLY INFRINGE THE '978 PATENT BECAUSE THEY DO NOT ATTACH MONITORS TO STANDS.

To be liable for direct infringement, the alleged infringer must either make, use, offer to sell or sell the patented invention during the term of the patent. 35 U.S.C. § 271(a). In other words, Plaintiffs must show that each and every element of the accused claim(s) is met, literally, or by an equivalent, in the accused product. *Upjohn Co. v. Mova Pharmaceutical Corp.*, 225 F.3d 1306, 1308-09 (Fed. Cir. 2000). Defendants do not make, use, offer to sell, or sell a product that meets each and every element of the accused claims because Defendants do not sell monitors attached to stands.

Claims 16 and 17 of the '978 patent cover "a display system…comprising…a pair of electronic displays." It is undisputed that Defendants do not sell a display system comprised of a pair of electronic displays. *See* Plaintiffs' Brief at 7-8. In fact, Plaintiffs concede that Defendants do not directly infringe, unless two monitors are bundled and sold with an Ergotron stand. *Id*. ("Simply put, Defendants directly infringe claims 16 and 17 by offering the bundled monitors and stands for sale.").

Even that, however, is not sufficient to directly infringe the '978 patent. Rather, as Plaintiffs' own ***patent infringement expert*** admits, there is no direct infringement of the '978 patent unless and until monitors are ***mounted*** to the stand:

> Q:   And to directly infringe, there has to be two monitors mounted on the DS100 stand correct?
>
> A:   Yes.

2

Defendants' Ex. D at 124: 12-14.[1] This is obviously true, because claims 16 and 17 include the elements of a "means for adjusting the angular orientation of each of the displays relative to the arm assembly to thereby permit said displays to be angled toward each other to a desired degree" and a "means for adjusting the angular orientation of each of the displays relative to the arm assembly about a generally vertical axis to permit said displays to be angled relative to each other to a desired degree." Plaintiffs' Ex. 18. Clearly, the accused products cannot meet these claim limitations unless the monitors are attached to the stand. In desperation, Plaintiffs throw their own expert under the bus, admitting that he is not qualified to opine as to infringement. *See* Plaintiffs' Brief at 9. Defendants do not sell monitors attached to stands; therefore, they do not directly infringe.[2]

Finally, Plaintiffs provide no admissible evidence in support of their claim that Ergotron actually *made* infringing products. Images from Ergotron's website are inadmissible hearsay that do not defeat Ergotron's motion for summary judgment. *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006) (noting that hearsay evidence is inadmissible for summary judgment purposes under Federal Rule of Civil Procedure 56). Furthermore, there is no evidence in the record that the images in Plaintiffs' Exhibits 2, 9, and 21 are not drawings or computerized images; therefore, they do not support Plaintiffs' argument. Finally, Exhibit 22 shows images of people with LX stands. There is no indication where these photos were taken or came from, or if anyone at Ergotron actually assembled the three stands shown. Defendants' motion is not defeated by these inadmissible images. Thus, the Court should grant Defendants' motion for summary judgment on the issue of direct infringement by Defendants.

---

[1] Exhibits are attached to the Niederluecke Declaration filed with Defendants' initial brief.
[2] Plaintiffs claim that Defendants' position represents the "biggest loophole in patent history." It is Plaintiffs, however, that are searching for the loophole by trying to create direct infringement where all of the claim limitations have not been met.

### III. DEFENDANTS DO NOT NECESSARILY INFRINGE; THEREFORE PLAINTIFFS HAVE NOT SHOWN THAT END USERS DIRECTLY INFRINGE.

#### A. The DS100 Stand Does Not Necessarily Infringe Because It Is Not Capable Of Infringing When The Hinges Are Attached In A Vertical Configuration.

The DS100 stand does not infringe when the hinges are assembled in the vertical configuration. In that configuration, the attached monitors are unable "to be angled toward each other to a desired degree" or "adjust[ ] the angular orientation of each of the displays relative to the arm assembly about a generally vertical axis to permit said displays to be angled relative to each other to a desired degree." *See* Plaintiffs' Ex. 18. Therefore, a DS100 stand with hinges assembled in the vertical configuration does not infringe the '978 patent because it does not meet the accused claim limitations.

In other words, the DS100 stand does not have the required ***presently existing*** capability to pan when the hinges are assembled in the vertical configuration. *See Cyrix Corp. v. Intel Corp.*, 846 F.Supp. 522, 536 (E.D. Tex. 1994) (quotations and citations omitted). It is impossible for the monitors to be angled toward one another while the hinges are attached vertically. Rather than dispute this fact, Plaintiffs claim that because the DS100 stand can be taken apart and re-assembled with the hinges in the horizontal configuration, the DS100 infringes. The Federal Circuit has rejected this precise argument. *High Tech Medical Instrumentation v. New Image Industries, Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995) ("But a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim.").

The DS100 stand was specifically designed so that there were two possible, mutually exclusive, uses of the product. *See* Defendants' Ex. E at 37:24 – 38:20. Plaintiffs' own expert conceded that the design of the DS100 shows that it was intended to be able to tilt or pan. *See* Defendants' Ex. D at 38:25 – 40:40. Therefore, when end users choose to assemble the hinges in

4

the vertical configuration so that the monitors tilt, the DS100 is working for one of its intended purposes. No further assembly or alterations are necessary to make the product function as chosen by the end user.

This is the quintessential example of an accused component having a substantial, noninfringing use. Plaintiffs' argument swallows whole the theory of contributory infringement, effectively eliminating the established principle that a substantial noninfringing use prevents an accused component from liability for contributory infringement. According to Plaintiffs, if the product can be taken apart and re-assembled into an infringing configuration – it infringes – without any consideration of a substantial noninfringing use. Under this theory, no component of an apparatus could escape liability for contributory infringement because the component must be capable of infringing to even be accused in the first place. This is not the law, and Plaintiffs' claims to the contrary must be rejected. 35 U.S.C. § 271(c); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1275-76 (Fed. Cir. 2004).

The DS100 stand can be used in one of two ways. When the hinges are assembled in the vertical configuration, the DS100 has no presently existing capability to infringe. Accordingly, the DS100 does not necessarily infringe the '978 patent.

> B. **Because The DS100 Stand Does Not Necessarily Infringe, There Is No Evidence In The Record To Support A Finding Of Direct Infringement By End Users.**

Because the DS100 stand does not necessarily infringe, Plaintiffs must show direct infringement by end users to sustain their claim for indirect infringement. *Dynacore Holdings*, 363 F.3d at 1275-76 ("[Plaintiff] must therefore either demonstrate that [the accused product] necessarily infringe[s] the [patent in suit] or point to a specific instance of direct infringement and restrict its suit to liability stemming from that specific instance."); *ACCO Brands, Inc. v. ABA Locks Manufacturer Co., Ltd.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) ("That broad legal

5

statement does not alter the requirement that ACCO must prove specific instances of direct infringement or that the accused device necessarily infringes the patent in suit, in order to sustain the jury verdict of induced infringement.").

Plaintiffs' reliance on *Symantec Corp. v. Computer Assocs. Int'l*, 522 F.3d 1279 (Fed. Cir. 2008) is misplaced. Plaintiffs only quote to a portion of the opinion to argue that circumstantial evidence alone is sufficient to prove direct infringement in every situation. Plaintiffs' Brief at 10. In *Symantec*, however, the Federal Circuit's opinion regarding circumstantial evidence was based on the fact that the accused product necessarily infringed:

> ***This is not a case where the customers may be using the product in either an infringing way or a non-infringing way***; ***[Defendant's] customers can only use the [accused products] in an infringing way.*** <u>***Under these circumstances***</u>, [Plaintiff] has produced sufficient circumstantial evidence of direct infringement to create a genuine issue of material fact, even though [Plaintiff] has not produced evidence that any particular customer has directly infringed the [patent in suit].

*Id*. at 1293 (emphasis added). Contrary to Plaintiffs' argument, *Symantec* does not hold that direct infringement can be shown solely by circumstantial evidence when the accused product does not necessarily infringe.

Moreover, despite Plaintiffs' claim that there is "overwhelming circumstantial evidence," Plaintiffs cite only one piece of circumstantial evidence to support their argument that end users directly infringe – Ergotron's installation manual.[3] Plaintiffs' Brief at 10-11. Plaintiffs rely on the Federal Circuit's opinion in *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354 (Fed. Cir. 2006) to argue that the manual alone is sufficient to show direct infringement by end

---

[3] As set forth in Section II, *supra*, Plaintiffs' claim that Defendants directly infringe fails as a matter of law, and cannot support a finding of indirect infringement by end users. In addition, as explained in Section III, A, *supra*, the DS100 stand does not necessarily infringe. Consequently, the fact that monitors are attached to the DS100 stand, without evidence of *how* they are attached, is not circumstantial evidence of direct infringement by end users.

6

users. Plaintiffs' Brief at 10-11. In *Golden Blount*, however, there was no evidence showing that the accused infringer promoted the use of its device in a noninfringing manner. *See* 438 F.3d at 1362-65. Rather, the record evidence consisted solely of the instructions which taught the infringing configuration. *Id*.

In sharp contrast, the record in this case is full of examples of Ergotron promoting the use of the DS100 stand in a noninfringing configuration. *See, e.g.,* Plaintiffs' Ex. 2 ("Patented pivot mechanisms allow you to *tilt*, pivot, and turn your flat panel monitors for maximum efficiency."); Plaintiffs' Ex. 4 ("*Tilt* and turn monitors for maximum ergonomic comfort"); Plaintiffs' Ex. 7 ("The Ergotron Dual DeskStands free up desk space and *tilt* and turn the monitors for ergonomic comfort and optimal viewing angles."); Plaintiffs' Ex. 8 ("The Ergotron DeskStand *tilts* and turns the monitors for ergonomic comfort and maximum viewing angles."); Plaintiffs' Ex. 9 (showing that the DS100 is capable of tilting the monitors); Plaintiffs' Ex. 11 ("Its pivot mechanisms allow you to *tilt*, pivot and turn your flat panel monitors for optimum efficiency."); Plaintiffs' Ex. 21 ("Patented pivot mechanisms allow you to *tilt*, pivot and turn your flat panel monitors for maximum efficiency and ergonomic comfort.").[4] In the face of this undeniable evidence, Ergotron's installation manual by itself is insufficient to support a finding of direct infringement by end users.

---

[4] Defendants' extensive promotion of the use of the DS100 stand in a noninfringing configuration distinguishes this case from *Lucent Tech., Inc. v. Gateway, Inc.*, 2008 WL 2491955 (S.D. Cal. June 19, 2008), relied on by Plaintiffs. In *Lucent*, the "extensive record" of circumstantial evidence included instructions *and* numerous other forms of encouragement to practice the infringing method, including "tutorials, help files, web pages, manuals, promotional materials, the testimony of those familiar with these materials, and other sources." *Id*. at *10-11. In contrast, the record here shows that Ergotron promoted the noninfringing configuration.

Accordingly, the Court should grant Defendants' motion for summary judgment on the issue of indirect infringement because the DS100 stand does not necessarily infringe the '978 patent, and there is no evidence of direct infringement by end users.

### IV. DEFENDANTS DO NOT CONTRIBUTORILY INFRINGE BECAUSE THE DS100 STAND HAS A SUBSTANTIAL NONINFRINGING USE.

Plaintiffs argument that Defendants contributorily infringe is based solely on their misguided contention that the DS100 does not have a substantial noninfringing use because it is capable of infringing even when the hinges are attached in the vertical configuration. Plaintiffs' Brief at 12-15. As explained in Section III, A, *supra*, Plaintiffs' position would make an accused infringer liable for contributory infringement with respect to any component of an apparatus regardless of the presence of a substantial noninfringing use. Clearly, this is not the law. *See* 35 U.S.C. § 271(c) (imposing liability for contributory infringement only if the accused product is "not a staple article or commodity of commerce suitable for substantial noninfringing use").

When the hinges are attached to the DS100 stand in a vertical configuration, the attached monitors are only capable of tilting, not booking. Consequently, the DS100 stand does not infringe in this configuration. The possibility that the DS100 stand can be disassembled and the hinge moved into an alternate position does not change the fact that when the hinge is assembled in the vertical position the DS100 does not and cannot infringe. Again, this fact is supported by Plaintiffs' own patent infringement expert:

> Q: So that there, in fact, is another arrangement that would ***not infringe*** the patent?
>
> A: As we went over earlier, yes.

Defendants' Ex. D at 119:14-18 (emphasis added). Plaintiffs have not met their burden of showing that the DS100 stand does not have a substantial noninfringing use. The Court should grant summary judgment against Plaintiffs' claim for contributory infringement by Defendants.

### V. CDW, TECH DATA, AND DELL DO NOT INDUCE INFRINGEMENT BECAUSE THERE IS NO DIRECT OR CIRCUMSTANTIAL EVIDENCE OF SPECIFIC INTENT TO INFRINGE.

Plaintiffs' claim that CDW, Tech Data, and Dell induce infringement is based on two baseless arguments: (1) advertisements for the DS100 stand allegedly only promote infringing uses; and (2) these resellers sold and shipped Ergotron's stands packaged with Ergotron's installation manual. Plaintiffs' Brief at 16. Neither of these facts establish the requisite intent for inducement to infringe.

First, Plaintiffs do not dispute that advertisements promoting both an allegedly infringing and noninfringing use are insufficient to support a finding of specific intent for inducement. Plaintiffs' Brief at 16; *See also Epicrealm Licensing LLC v. Autoflex Leasing, Inc.*, 492 F.Supp.2d 608, 635 (E.D. Tex. 2007) ("This intent cannot exist where the actions allegedly encouraging infringement could also encourage alternative, noninfringing acts."). Again, Plaintiffs rely solely on their contention that the DS100 stand infringes even when the hinges are attached in the vertical configuration. Plaintiffs' Brief at 16. As explained in Section III, A, *supra*, this argument fails as a matter of law because the DS100 stand is not capable of infringing when it is assembled with the hinges in the vertical configuration. Thus, because CDW, Tech Data, and Dell promote both an allegedly infringing and noninfringing use of the DS100 stand, the advertisements cannot support specific intent for inducement. *See Epicrealm*, 492 F.Supp.2d at 635 ("Specific intent to cause the acts which constitute infringement cannot be inferred from actions that merely make possible both infringing and non-infringing activities.").

Second, selling and shipping DS100 stands packaged by Ergotron, with installation manuals written by Ergotron, does not show specific intent to cause infringement by CDW, Tech Data, or Dell. These parties had no role whatsoever in the drafting of Ergotron's installation manuals, and there is no evidence in the record that they were even aware of their existence.

Unknowingly selling pre-packaged products with installation manuals that depict the allegedly infringing use does not impose specific intent to cause infringement on CDW, Tech Data, or Dell. *See ACCO Brands*, 501 F.3d at 1313 (finding that there was no specific intent for inducement because the alleged infringer did not provide the instructions that showed the infringing use and there was "no evidence that [defendant] knew of the hang card or was involved in its preparation.").

Plaintiffs have not shown that CDW, Tech Data, or Dell possessed the specific intent to cause acts of infringement; therefore, the Court should grant summary judgment denying Plaintiffs' claim for inducement against these parties.

## VI.  ERGOTRON DOES NOT INFRINGE UNDER § 271(f) BECAUSE IT ONLY SHIPS ONE COMPONENT OF THE PATENTED PRODUCT OUTSIDE THE UNITED STATES.

It is undisputed that Ergotron ships and sells only stands outside the United States. Plaintiffs' Motion at 17. Ergotron does not supply the other components, namely monitors, that are required to assemble an arguably infringing product. Because Ergotron sells merely a single component, without monitors, its sales of the DS100 and LX stands outside the United States do not infringe under § 271(f).

## CONCLUSION

For these reasons, Ergotron, CDW and Tech Data respectfully request the Court grant their motion for non-infringement in its entirety, and dismiss Plaintiffs' claims for direct infringement for all accused products, indirect infringement against CDW, Tech Data, and Dell for all accused products, and indirect infringement against Ergotron for its DS100 stands.

Dated: October 14, 2008            By: /s/ Eric H. Findlay
                                               Eric H. Findlay
                                               State Bar No. 00789886
                                               RAMEY & FLOCK, P.C.
                                               100 E. Ferguson, Suite 500
                                               Tyler, Texas 75702
                                               Telephone: 903/597-3301
                                               Facsimimle: 903/597-2413
                                               E-mail: efindlay@rameyflock.com

                                               Lora Mitchell Friedemann
                                               Kurt J. Niederluecke (lead counsel)
                                               Matthew J.S. Graham
                                               FREDRIKSON & BYRON, P.A.
                                               200 South Sixth Street, Ste 4000
                                               Minneapolis, MN 55402-1425
                                               612.492.7000 (telephone)
                                               612.492.7077 (facsimile)

                                               ATTORNEYS FOR DEFENDANTS
                                               ERGOTRON, CDW, AND TECH DATA

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 14, 2008, true and correct copies of the foregoing was served upon all parties via electronic mail.

                                                           /s/ Eric H. Findlay
                                                           Eric H. Findlay