IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

MASS ENGINEERED DESIGN, INC.
And JERRY MOSCOVITCH

Plaintiffs,
Counter-defendants,
Cross-claimants

vs.

ERGOTRON, INC., DELL INC., DELL
MARKETING L.P., and TECH DATA
CORPORATION

Defendants,
Counterclaimants,

and

CDW CORPORATION,

Counterclaimant and
Third-Party Plaintiff

and

A.B. DISTRIBUTING, INC., D&H
DISTRIBUTING COMPANY, EIZO NANO
TECHNOLOGIES INC., INGRAM MICRO
INC., INTERNATIONAL AUDIO VISUAL
INC., SYNNEX CORPORATION, TECH
DATA CORPORATION, CSAV, INC.,
GLOBAL MARKETING PARTNERS, INC.,
SEA LAND, INC., PEERLESS INDUSTRIES,
INC., DOUBLESIGHT DISPLAYS, LLC, AND
BRETFORD MANUFACTURING, INC.

Third-Party Defendants,

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

JUDGE:  LED

Civil Action No. 02-06CV-272

JURY TRIAL DEMANDED

## PLAINTIFFS' MOTIONS *IN LIMINE*

Plaintiffs Mass Engineered Design, Inc., and Jerry Moscovitch (collectively, Mass),

move *in limine* for the following relief.

Mass requests that the named defendants, and their respective attorneys and witnesses be

instructed not to mention or aver to, in the presence of the jury, either directly or indirectly, upon

1

voir dire, statement of the case, interrogation of the witnesses, argument, objections before the jury, or in any other means or manner inform the jury, or bring to the jury's attention any of the matters set forth below, unless and until such matters have been first called to the Court's attention, out of the presence of the jury, and a favorable ruling received as to the admissibility of those matters.

Mass further requests that Defendants' attorneys be specifically instructed to inform all of its witnesses not to volunteer, inject, disclose, state or mention in the presence of the jury any of the matters enumerated below, unless specifically questioned thereon and after prior ruling by the Court.

Mass maintains that the following matters are generally inadmissible, irrelevant, and prejudicial to its right to a fair and impartial trial. The violations of any, or all, of these instructions will constitute harm to Mass, deprive Mass of a fair and impartial trial, and Mass requests that the Court instruct all counsel that the failure to abide by such Order of the Court may constitute contempt, concerning the following:

* * * * *

1.      **Reference to Motions _In Limine_**: Any reference or testimony to the fact that Mass filed the instant motions _in limine_, in particular or in general, or that the Court granted or denied any such relief. FRE 401-403.

GRANTED: _____     DENIED: _____

2.      **Reference to Motions or Prior Rulings By This Court:** Unless specifically authorized, any reference or testimony to the fact or contents of any motion or brief Mass filed or opposed with this Court in this case, or ruling by this Court on any such motion, including but not limited to any discovery motion, sanctions motion, or dispositive motion. FRE 401-403.

GRANTED: _____   DENIED: _____

3.    **Requests for Stipulation and Documents:** Any requests by counsel for Defendants for any stipulations from counsel for Mass, or any request that Mass's counsel produce any documents from their files. Making such requests in the presence of the jury or jury panel is improper. FRE 401-403.

GRANTED: _____   DENIED: _____

4.    **Reference to Document Production or Missing Documents**: Unless specifically authorized otherwise by this Court, any reference to any failure to produce documents or missing documents by or from any party.  *See* Fed. R. Civ. P. 26(a), 37(c)(2); FRE 401-403.

GRANTED: _____   DENIED: _____

5.    **Reference to Claims of Privilege:** Any reference or testimony to the fact that any party has made claims of privilege regarding documents and/or testimony, in particular or in general. Any such reference or evidence would be irrelevant, FRE 402, and/or more prejudicial than probative, FRE 403. *See also* FRE 501, 502.

GRANTED: _____   DENIED: _____

6.    **Reference to Privileged Subject Matter:** Any reference or testimony regarding subject matter that is privileged and has not been waived. In particular, counsel for Defendants may not ask questions that will or would reasonably be known to elicit testimony on privileged subject matter. Any such reference or evidence would be irrelevant, FRE 402, and/or more prejudicial than probative, FRE 403. *See also* FRE 501, 502.

GRANTED: _____     DENIED: _____

7.    **Any Reference to Objections During the Playing of Deposition Testimony:** Both parties made objections to form to preserve their rights during deposition testimony.  When such video or transcript is displayed to the jury, this Court should order all parties to remove all objections, comments, side bars, or responses to objections, to the extent practicable.  This Court will rule on the objections in due course, and playing them in front of the jury is irrelevant and unduly prejudicial under Rules 401, 402, and 403.

GRANTED: _____     DENIED: _____

8.    **The Nature of Any Fact Witness's Preparation for Trial or for Deposition Testimony with That Witness' Counsel:** Details about a fact witness's preparation with his or her counsel either to testify at trial or to prepare for deposition testimony is protected by the attorney-client and work product privileges.  Neither party should be permitted to question witnesses about these matters in front of the jury because it will result in prejudicing the jury. *See* Rule 403.  Accordingly, Plaintiffs request this Court to prevent any party from asking any witness represented by counsel about the nature of his or her preparation with that counsel for trial or deposition testimony. FRE 401-403, 501-502.

GRANTED: _____     DENIED: _____

9.    **The Nature of Any Expert Witness's Preparation for Trial with That Party's Counsel:** All parties previously have agreed that communications in preparation for trial between an expert and the party and/or party's counsel who hired him or her would be privileged.  Accordingly, Mass requests this Court to prevent either party from asking any expert

about the nature of his or her preparation with counsel for trial or deposition testimony because it will result in prejudicing the jury. *See* FRE 401-403.

GRANTED: _____   DENIED: _____

10.   **Reference to Fee Agreements:** Any reference to Mass's counsel's fee agreement in this case, including the terms thereof, *e.g.*, hourly versus contingent, and including the fees that Mass's counsel would earn depending upon any outcome of this case. FRE 401-403.

GRANTED: _____   DENIED: _____

11.   **References to Law Firms or Lawyers Representing Any Party:** Any reference to or testimony about the law firms or lawyers representing any party including, without limitation, references to the size of the law firm, the geographic location of the law firm's offices, other matters handled by the law firm, other matters handled by the lawyer, other clients or types of clients represented by the law firm or lawyers, any disciplinary action or investigation into the law firm or lawyer representing any party, the wealth of any attorney or law firm, is irrelevant and would be unduly prejudicial. Accordingly, any such references should be excluded under Rules 401, 402, and 403.

GRANTED: _____   DENIED: _____

12.   **References to Courtroom Attendees:** Any references, allegations or evidence regarding the presence in the courtroom of any persons other than: witnesses, counsel, corporate representatives, and court personnel. FRE 401-403.

GRANTED: _____   DENIED: _____

13.   **References to Jury Consultants and/or Shadow Jurors:** Any reference to any party's use, if any, of jury consultants or jury study or focus groups to assist with trial preparation, jury selection, or trial.  A party's use of jury consultants is not relevant to any issue in this litigation and any reference to this fact should be prohibited under Rules 401, 402, and 403.

GRANTED: _____      DENIED: _____


14.   **Connections to Texas:** Any reference to Plaintiff's connection to Texas, or lack thereof, including but not limited to the amount or type of business conducted in Texas or the length of time Mass has had activities existed in Texas. Such information is irrelevant to any issue in this case and is designed to cause unwarranted bias against Mass as well as mislead the jury, and is therefore inadmissible under FRE 401-403.

GRANTED: _____      DENIED: _____


15.   **References to Foreign Countries:** Any disparaging references to the fact that Plaintiffs are from Canada or any disparaging references about Canada. FRE 401-403.

GRANTED: _____      DENIED: _____


16.   **Testimony From Any Witness Not Timely Disclosed:** Any testimony at all from witnesses not timely disclosed included in Defendants' witness lists as required by the schedule for this case. Defendants should not be permitted to surprise Mass with previously unidentified witnesses. FRCP 26; Local Rule 26; Docket No. 439.

GRANTED: _____      DENIED: _____

17.   **Testimony From Any Witness Not disclosed in Defendants' Rule 26 disclosures.**
Defendants should not be permitted to benefit from testimony from any individuals not identified as required by Fed. R. Civ. P. 26.

GRANTED: _____   DENIED: _____


18.   **Fact Witnesses As Experts:** Testimony from a fact witness—including but not limited to Scott Gill, Dan Schwab, Pete Segar, and Bob Fluhrer (none of whom has been disclosed as an expert witness)—comparing a device to the claims in the patent. Any such testimony would be improper expert testimony. FRE 701; *see also* FRE 403; FRCP 26; Local Rule 26; Docket No. 439.

GRANTED: _____   DENIED: _____


19.   **Surprise or Untimely Expert Opinions:** Unless otherwise authorized, any expert opinion testimony not disclosed previously pursuant to the appropriate deadline(s), with the exception of any new evidence that is simply confirmatory. Docket No. 439; FRCP 26; Local Rule 26.

GRANTED: _____   DENIED: _____


20.   **Claims or Defenses Not Pleaded:** Any testimony, statement, opinion or argument offered to support an unpleaded claim or defense.  It would be highly prejudicial to Mass to allow Defendants to "sandbag" Mass at trial with a claim or defense that was not pleaded within the timeline required by this Court's Docket Control Order. *See* FRCP 8 & 15.

GRANTED: _____   DENIED: _____

21.    **Plaintiffs' Selection of Potential Defendants:** Any reference to Plaintiffs' inclusion or exclusion of potential parties or Mass's choice of which Defendants to bring suit against in this case. Such information is irrelevant to any issue in this case and is likely to cause jury confusion of the issues, and is therefore inadmissible under FRE 401-403.

GRANTED: _____     DENIED: _____

22.    **Any Reference to Any Prior Claims, Causes of Action, or Forms of Relief Asserted by Plaintiffs In This Lawsuit That Have Been Dismissed or Abandoned.** Any such patent claims or causes of action, by virtue of being dropped, are irrelevant to the case before the jury. Any reference to those claims or causes of action would be solely for improper purposes. FRE 401-403.

GRANTED: _____     DENIED: _____

23.    **Reference to whether an expert has been excluded in a prior case:** Any reference to or testimony about whether any party's hired experts have had testimony challenged or excluded in any other case. Reviewing past opinion-testimony from any expert, including any determinations made by a judge or jury on that expert's past opinions, has no bearing on the merits of this case or of any expert's opinions in this particular case. FRE 401-403; 703.

GRANTED: _____     DENIED: _____

24.    **Reference to Anything Excluded by *Daubert* Motion or Motion to Strike:** Any reference to or evidence about subject matter that this Court has otherwise excluded by granting a Daubert motion or a motion to strike.

GRANTED: _____     DENIED: _____

25. **Statements By Counsel Regarding Their Personal Beliefs or Opinions About the Case:** The jury may not make findings by weighing the statements of counsel regarding counsel's evaluation of the case. Such statements would be improper, and more prejudicial than probative. FRE 401-403.

GRANTED: _____     DENIED: _____


26. **Representations Contradicting Corporate Representative Testimony:** Any evidence, testimony, opinion, or argument that contradicts in any way the 30(b)(6) deposition testimony of a Defendant witness. Such testimony is binding on the producing Defendant, and, as such, Defendants should be bound to the testimony of their corporate representatives. FRCP 30(b)(6).

GRANTED: _____     DENIED: _____


27. **References to the E.D. Tex. as Venue:** Any reference to or evidence suggesting that the Eastern District of Texas is an improper or unusual venue in which to try this case. FRE 401-403.

GRANTED: _____     DENIED: _____


28. **Reference to Religious Preference:** Any reference to or evidence about the religious preference of any person, including any party or witness. FRE 401, 610.

GRANTED: _____     DENIED: _____


29. **Reference to Equitable Issues:** Any reference or testimony exclusively relevant to equitable issues—such as but not limited to, inequitable conduct, equitable estoppel, defective

9

reissue, or laches—which are reserved for the Court and not the jury. Any such reference or evidence would be irrelevant, FRE 402, and/or more prejudicial than probative, FRE 403.

GRANTED: _____     DENIED: _____


30.   **Criticisms of the Patent Office or Its Employees:** Any testimony, statement, opinion or argument suggesting that the PTO and its examiners lack credentials, are overworked, or are not diligent or are prone to error. Such evidence is not relevant and contravenes the statutory presumption that an issued patent is valid and enforceable. 35 U.S.C. § 282. *See also EZ Dock, Inc. v. Schafer Systems, Inc.*, 2003 U.S. Dist. LEXIS 3634 (D. Minn. March 8, 2003).

GRANTED: _____     DENIED: _____


31.   **Relative Importance of Claim Elements:** Any evidence, testimony, argument, or other reference to any testimony relating to the alleged relative importance of the claim elements of any of the claims of the patent-in-suit. The Court should not allow any statements or testimony asserting that any particular claim element of any claim of the patent-in-suit such as means for adjusting is more important than any of the other claim elements. The claims define the invention as a whole. *See, e.g., Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention...."); *Radio Steel & Mfg. Co. v. MTD Products, Inc.*, 788 F.2d 1554, 1556 (Fed. Cir. 1986). Any such statements would be an incorrect assertion of law and would pose a significant danger of irreversible prejudice, confusion of the issues, and misleading the jury that could not be corrected by instruction from Court. FRE 403. Accordingly, Mass requests that the Court preclude Defendants from offering or eliciting testimony that any particular claim element of the patent-in-suit is more important than any other claim elements

GRANTED: _____     DENIED: _____

32.     **Untimely or Improper Prior Art:** Any reference to or evidence regarding any prior art that was not properly disclosed in the Defendants' invalidity contentions, including but not limited to the prior art discussed by Dr. Stoll regarding a "person of ordinary skill." This includes any prior art not disclosed in accordance with 35 U.S.C. § 282, not specifically charted as required by Local P.R. 3-3, and/or not timely disclosed pursuant to the relevant deadlines for this particular case. *See also* Plaintiffs' Motion to Strike Stoll, Docket No. 405.

GRANTED: _____     DENIED: _____

33.     **Reference to an Incorrect or Altered Obviousness Standard:** Any evidence, testimony, or reference suggesting that the patent-in-suit issued under the wrong obviousness standard or that the obviousness standard has changed. Defendants should not be allowed to argue that the patents-in-suit were issued under the wrong obviousness standard.  While *KSR Int'l Co. v. Teleflex Inc.,* 127 S.Ct. 1727 (2007), rejected the rigid application of the "teaching/suggestion/motivation" test, that holding is irrelevant to any issue to be decided by the jury.  Defendants should not be allowed to use this decision to improperly attack the PTO on the patent-in-suit or to argue or advise the jury that the obviousness standard has changed. The patent-in-suit is still presumed valid. 35 U.S.C. § 282; *Fromson v. Advance Offset Plate, Inc.,* 755 F.2d 1549, 1555 (Fed. Cir. 1985) (holding that the presumption of validity is "static" and can neither be strengthened nor destroyed).

It is solely within the Court's purview to instruct the jury on obviousness. It would therefore be improper for Defendants to instruct the jury otherwise. Fed. R. Civ. P. 51; see *Bales v. Uptergrove,* No. 00-7009, 2001 U.S. App. LEXIS 3101, at *5 (10th Cir. Mar. 1, 2001) ("It is

the province of the district court to instruct the jury concerning the law applicable to a case, not that of the litigants' attorneys."); *Bensen v. Am. Ultramar*, No. 92 Civ. 4420, 1996 U.S. Dist. LEXIS 10647, *38-*42 (S.D.N.Y. July 26, 1996) (excluding documents containing the legal opinions of a foreign law firm because "the proffered legal opinions will invade the province of the court to determine the applicable law and to instruct the jury as to that law."). Any contradictory argument implying that the PTO used the wrong standard in untrue, unfairly prejudicial, and misleading to the jury. Allowing the parties to attack the PTO by suggesting that it may have applied the wrong obviousness standard would be unduly prejudicial and would certainly confuse the jury. FRE 401-403.

GRANTED: _____   DENIED: _____

34.   **Matters Related to the *Markman* Order:** Any evidence, testimony, argument, or other references contrary to the Court's *Markman* Order or the claim construction process involved in the same. Defendants should be precluded from offering testimony about or referring to the parties' arguments and positions relating to the *Markman* process or this Court's reasoning or thought processes underlying its claim constructions. Testimony or argument relating to these subjects is not relevant. FRE 401 & 402. The prejudice, confusion, and waste of time associated with introducing to the jury evidence regarding the claim construction process (with the exception of the Court's jury instructions that will include its claim constructions) substantially outweighs the probative value of such evidence, if any. Fed. R. Evid 403.

For the same reason, Defendants should not be permitted to offer testimony regarding this Court not adopting any particular claim constructions proposed by Mass during the *Markman* process. The Court's decision not to adopt any particular claim construction proposed by Mass should not be presented to the jury in an effort to suggest that the Court found against Mass. *See,*

*e.g., Markman v. Westview Instruments,* 517 U.S. 370, 372 (1996) ("We hold that the constructions of a patent, including terms of art within its claim, is exclusively within the province of the court."); *Eolas Techs.,* 270 F. Supp. 2d at 1008 (prohibiting expert from testifying on interpretations and issues of law as "assessments of the law are the province of this court"); *Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.,* 288 F. Supp. 2d 562, 584 (S.D.N.Y. 2003) ("Claim construction is a matter exclusively within the province of the court and is determination made as a matter of law."); *Desert Aire Corp. v. AAON, Inc.,* 461 F. Supp.2d 369, 373 (D. Md. 2006) ("The first step in infringement analysis, known as claim constructions, is a matter of law and the providence of the court.").

GRANTED: _____        DENIED: _____


35.    **Reference to Alleged Misrepresentations to or withholding from the PTO:** Any reference to or evidence about alleged misleading of or lying to the PTO or intending to deceive the PTO such as by withholding information. Such evidence is relevant to inequitable conduct, only, which is an equitable issue reserved for the Court and not the jury. FRE 401-403; *see e.g., z4 Techs., Inc. v. Microsoft Corp.*, No. 6:06-CV-142 (Hon. Leonard Davis), 2006 U.S. Dist. LEXIS 58374, at *60 (E.D. Tex. Aug. 18, 2006) (hereafter, "*z4*") ("The Court reserved the issue of Colvin's inequitable conduct in obtaining the patents-in-suit for itself and heard evidence related to this issue outside the presence of the jury.").

GRANTED: _____        DENIED: _____


36.    **Reference to Patentee's Attorney Disclosures to the PTO:** Any reference to or testimony about what prior art MASS's former lawyers (including but not limited to Mirek

Waraksa or Mark Elchuk) would have disclosed to the PTO, as it relates solely to inequitable conduct, and in any event is irrelevant even to that issue. FRE 401-403; *z4* at *60.

GRANTED: _____    DENIED: _____


37.  **Infringer's patent as a defense to infringement**:  Any argument that a patent is a general defense to infringement.  Defendants should not be allowed to argue that owning their own patent precludes infringement of the '978 patent.  The grant of a patent is a right to exclude, not to right to make, use, or sell.  *Atlas Powder Co. v. E.I. du Pont De Nemours*, 750 F.2d 1569, 1580-81 (Fed.Cir.1984) ("The supposition that a right to make is created by the patent grant is obviously inconsistent with the established distinctions between generic and specific patents, and with the well-known fact that a very considerable portion of the patents granted are in a field covered by a former relatively generic or basic patent, are tributary to such earlier patent, and cannot be practiced unless by license thereunder.").  Accordingly, Mass requests that the Court preclude Defendants from arguing that their own patents are a defense to infringement of the '978 patent.

GRANTED: _____    DENIED: _____


38.  **Any Reference to a Claim's Definiteness:**  Any reference to or evidence about whether any of the patent-in-suit is indefinite. Dell moved for summary judgment on this issue and lost. Docket No. 156. To the extent that there are any issues still remaining, the parties have agreed expressly that such issues should be decided by the Court—not the jury.

GRANTED: _____    DENIED: _____

39.  **Any reference to or testimony from the Waraksa deposition:** Defendants violated Mass's privilege during the deposition of Mr. Waraksa, a former lawyer for Mass. Defendants' counsel even met surreptitiously with Mr. Waraksa prior to his deposition. Docket No. 528. The proper remedy for such a violation is to exclude any testimony from Mr. Waraksa, and references thereto. *See* Plaintiffs' Motion to Compel the Waraksa Interview Notes, Docket No. 466; Plaintiffs' Response to Ergotron's Motion for Summary Judgment on Invalidity and Inequitable Conduct, Docket No. 494.

GRANTED: _____     DENIED: _____

40.  **Waraksa or Elchuck Testimony:** Any testimony from or references to the testimony of Messrs. Waraksa or Elchuk. Any such testimony would be relevant to allegations of inequitable conduct, only, or other equitable issues properly reserved for the Court and not the jury. *See* FRE 401-403; *z4* at *60.

GRANTED: _____     DENIED: _____

41.  **Knowledge or Disclosures of Moscovitch to the PTO Regarding Pre-Cricitial-Sales Date Sales, Uses or Publications:** All references or testimony going to knowledge or disclosure to the PTO by Jerry Moscovitch (the named inventor of the patent-in-suit) of alleged pre-critical-date sales, uses, or publications concerning the alleged eBook, XGA, LO2, LOX, or any other alleged prior art. Such material is relevant to allegations of inequitable conduct, only, which is an equitable issue reserved for the Court and not the jury. *See* 401-403; *z4* at *60.

GRANTED: _____     DENIED: _____

42.     **Reference to Alter Ego or Piercing the Corporate Veil**: Any reference to or evidence about piercing the veil or alter ego regarding Mass Engineered Design, Inc., or any predecessor of the same. Defendant Dell never raised its "alter ego" theory until its Response to Mr. Moscovitch's Summary Judgment Motion of Non-Infringement during dispositive motion-practice on October 6, 2008. Docket No. 469. Dell furthermore never specifically never pleaded this defense or theory. For that reason alone, it should be stricken. Furthermore, the issue is an equitable one and thus is reserved for the Court, not the jury.

GRANTED: _____     DENIED: _____

43.     **Reference to or Testimony by Susan Calzone, Ed Duffy, and Sean Roarty as to Alleged Invention by Bloomberg Representatives, or Misnaming of Inventors on the '978 patent, or Bloomberg's Alleged Ownership of the Patents:** For the reasons stated in Plaintiffs' Motion for Partial Summary Judgment That No Bloomberg, L.P., Employee Was a Co-Inventor, *see* Docket No. 400, a jury should not hear any evidence of any alleged invention by Bloomberg employees because Defendants have not provided sufficient collaboration as a matter of law. FRE 402 & 403.

GRANTED: _____     DENIED: _____

44.     **Reference to Moscovitch infringement of the '170 patent:** Any reference to or evidence about whether Plaintiff Jerry Moscovitch personally infringes the '170 patent—which belongs to Dell Marketing, L.P. (DMLP), as there is no evidence on this point nor did DMLP include this in their infringement contentions. Local P.R. 3-3.   *See also* Docket #402 (Moscovitch Motion for Summary Judgment of Non-Infringement on the '170 patent).

GRANTED: _____     DENIED: _____

16

45.   **Reference to Fraud by Moscovitch:** Any reference to or testimony about any fraud (including tax evasion, fraud on investors, or other issue) allegedly committed by Jerry Moscovitch or MASS, as it is not relevant to any issue in the case and/or the prejudicial effect outweights the probative value.  FRE 401-403.

GRANTED: _____       DENIED: _____


46.   **Testimony From or About Justin Nelson:** Defendants placed the name of Justin Nelson on their witness list submitted in the Pretrial Order, presumably referring to Plaintiffs' litigation counsel in this case, the attorney Justin A. Nelson.  This name not on the Defendants' Witness List or Rebuttal Witness List as required by this Court's Docket Control Order and therefore excludable for that reason alone.  This name also was not on the Defendants' Rule 26 disclosures and therefore excludable for that reason alone.  Moreover, assuming that Defendants intend to call a Plaintiffs' attorney, they have not stated their reason why and this testimony is irrelevant.  Even assuming some relevance, it is excludable under Rule 403. *See also* FRE 501.

GRANTED: _____       DENIED: _____


47.   **The Prosecution File of Mr. Waraksa for U.S. Patent Application No. 638,158:** Any testimony, statement, opinion, or other references to Mr. Waraksa patent prosecution file for U.S. Patent Application No. 638,158 (the "'158 Application"), which issued as U.S. Patent No. 5,687,939 (the "'939 Patent").  The prosecution file of the '939 Patent and its contents once maintained by Mr. Waraksa is not relevant to any issue in this case and are therefore irrelevant and inadmissible.  The '939 patent issued in 1997.  The present lawsuit was filed in 2006, nine years later.  There is no requirement to preserve a patent prosecution file.  The complete file

history of the '939 Patent is maintained with the U.S. Patent & Trademark Office and constitutes a complete history of the prosecution of the '939 Patent and is the official public record of the prosecution of the '939 Patent. *See Standard Oil Co. v. American Cyanimid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985) ("[T]he prosecution history (sometimes called 'file wrapper and contents') of the patent consists of the entire record of proceedings in the Patent and Trademark Office."); 37 C.F.R. § 1.11 (after a patent issues, the prosecution history (file wrapper) is open to public inspection). Even if any such matter may be of marginal relevance, its probative value is substantially outweighed by the danger of unfair prejudice to Mass, confusion of the issues, and misleading the jury, which would arise from Defendants' argument or suggestion that something sinister was in the file or that the file has been destroyed for some improper purpose. As such they should be excluded pursuant to FRE 402, 403. Moreover, to the extent the issue goes to any issue – which it does not – it goes to inequitable conduct or other equitable issue, and such issues are not properly before the jury in any event.

GRANTED: _____       DENIED: _____


48.   **Argument or Suggestion That Bloomberg, L.P. Paying for Design Transferred Rights to the Invention to Bloomberg, L.P.:** Any testimony, statement, opinion, or other references implying or suggesting that Bloomberg paying MASS Engineered Design, Inc. or Jerry Moscovitch to design, manufacture, and/or supply a product transfers rights in the design or invention to Bloomberg, L.P. Such testimony, statements, opinions or references suggesting that Bloomberg, L.P. has any rights in U.S. Patent No. RE 36,978 or the design created by Mr. Moscovitch or Mass in providing product to Bloomberg, L.P. is not relevant to any issue in this case and are there for irrelevant an inadmissible. It is a bedrock tenet of patent law that "an invention presumptively belongs to its creator." *Israel Bio-Engineering Project v. Amgen, Inc.*,

475 F.3d 1256, 1263 (Fed. Cir. 2007).  By contract, patent owners may assign or transfer their

ownership interests in the patent as personal property.  35 U.S.C. § 261.  However, patent rights

vest in the inventor unless there is a contract to the contrary.  Mr. Moscovitch did not assign any

patent or patent application rights to Bloomberg, L.P.  Therefore, Bloomberg, L.P.'s payments to

Mr. Moscovitch to design, manufacture, and/or supply products to Bloomberg, L.P. did not

transfer any rights in the designs or inventions of Mr. Moscovitch during or after his relationship

with Bloomberg, L.P.  This subject matter is outside the general knowledge of jurors, such that

arguments that Bloomberg, L.P. should own the '978 Patent or design created by Moscovitch or

Mass has the danger of unfair prejudice to Mass, confusion of the issues, and misleading the

jury.  As such,  arguments that Bloomberg, L.P. owns any rights in the '978 Patent or the designs

or inventions created by Mr. Moscovitch or in products he provided to Bloomberg, L.P. should

be excluded pursuant to FRE 402 and 403.

GRANTED: _____     DENIED: _____

49.     **CSAV's Own Patents As a Defense to Patent Infringement**: Defendant CSAV's U.S.

Patent Nos. 7,028,961 and 7,380,760 should be excluded from evidence entirely because there is

no evidence or expert testimony to demonstrate their relevance to equivalence of any element of

the '978 patent claims.  For an alleged infringer's patent to be relevant to whether structure in the

alleged infringer's accused device is a structural equivalent under §112, ¶6, the alleged infringer

must establish that (1) the allegedly equivalent structure is covered by the claims of the alleged

infringer's patent and (2) the alleged equivalent structure was a patentable difference between

the alleged infringer's claims and the patentee's claims in suit, *i.e.*, the accused structure is the

reason why the alleged infringer's claims were novel and non-obvious over the patentee's

claims. *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1580-81 (Fed. Cir.

1984) ("where defendant has appropriated the material features of the patent in suit, infringement will be found 'even when those features have been supplemented and modified to such an extent that the defendant may be entitled to a patent for the improvement.'") (quoting *Bendix Corp. v. United States*, 199 USPQ 203, 221-22 (Ct.Cl. Trial Div. 1978), *aff'd*, 600 F.2d 1364 (1979)). The '760 and '961 patents should be excluded because there is no admissible evidence that will establish that (1) the allegedly equivalent structure is covered by the claims of the alleged infringer's patents and (2) the alleged equivalent structure was a patentable difference between the alleged infringer's claims and the patentee's claims in suit. CSAV's technical expert, Mr. Bristow, did not opine on this issue. For example, who will testify about the file history of the CSAV patents, the reasons the CSAV claims were allowed, and that such reasons show that the USPTO considered those reasons as a basis for overcoming the 978 Patent? No one will. Even assuming lay testimony would be sufficient, CSAV's initial disclosures fail to identify any person who will testify on this issue. Thus, CSAV is left with attorney argument, which is inadmissible. FRE 401.

a. The '760 patent should be excluded because there is no evidence to suggest that the claims were allowed based on substitution for, rather than improvements on, the mounting means recited in the '978 patent claims. *Atlas Powder* at 1580. A basic reading of the claims of the '760 patent clearly demonstrates that patentability lies with the friction adjustment mechanism, which is able to increase friction between the frusto-spherical portion (half of a ball) and the first bearing portion (a cup) by turning the retaining portion (a shaft). The importance of the friction adjustment mechanism to the '760 patent is further demonstrated by the title: Self-Balancing Adjustable Mounting System with Friction Adjustment. In light of the patentable differences being from addition, not substitution, the

20

'760 patent should be excluded from evidence as not relevant to the issue of infringement.

b. The '961 patent should be excluded also because the '978 patent, nor any other patent obtained by Plaintiffs, is of record in the prosecution of the '961 patent. To have separate patentability considered with respect to infringement, the asserted patent must have been cited and considered as prior art during the prosecution of the alleged infringer's patent. *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996); *see also Roton Barrier Inc. v. Stanley Works,* 79 F.3d 1112, 1128 (Fed. Cir. 1996) (Nies, J., concurring). Lacking any consideration of the '978 patent during prosecution, the '961 patent should be excluded from evidence as being irrelevant to infringement of the '978 patent claims. FRE 401.


GRANTED: _____     DENIED: _____


50. **Testimony of Brett Reed**: Any testimony or argument regarding the effect of the '170 patent on the damages owed Mass for infringement of the '978 patent. Defendants should not be allowed to argue that the '170 patent can be used as leverage in reducing the damages owed Mass for infringement of the '978 patent. Such a scenario has no basis in law and violates the basic premise that reasonable royalties must compensate the patent owner for infringement of its patent. *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1109 (Fed.Cir.1996) ("The objective of [a] reasonable royalty calculation is to determine the amount necessary to adequately compensate for an infringement.").

Mr. Reed's testimony on the damages Mass should pay to Dell for alleged infringement of the Dell '170 patent already compensates Dell for its supposed value as a blocking patent.

Accordingly, lowering the damages owed Mass for Dell's infringement of Mass' '978 patent in hypothetical negotiations based on the '170 patent is impermissible as it does not "adequately compensate" Mass for the infringement of the 978 patent. Mr. Reed's testimony on the alleged effect of the '170 patent on the hypothetical  licensing negotiations for the '978 patent improperly blends hypothetical negotiations that would have taken place years apart, based on different products, and on different patents and thus is improper. The Federal Circuit has recognized that two separate acts of infringement of the *same* patent by two different products commencing on different dates each requires its own and separate reasonable royalty analysis. *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1363-64 (Fed. Cir. 2006).  This holding results in part from the principle that "a reasonable royalty determination for purposes of making a damages evaluation must relate to the time infringement occurred." *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1361 (Fed. Cir. 2006) (*citing Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed.Cir.1983) ("The key element in setting a reasonable royalty . . . is the necessity for return to the date when the infringement began.") (citations omitted)) . If two different products infringing the same patent years apart requires separate analysis, as held by the Federal Circuit, certainly the reasonable royalty for two separate products infringing two different patents must also be separately and distinctly evaluated. *Applied Medical Resources Corp.*, 435 F.3d at 1363.

It is further improper to use Dell's hypothetical threat of revoking a hypothetical license for the '170 patent, which already compensated Dell for the value of the '170 patent.  Dell's hypothetical strong arm tactic of threatening to revoke a license for the '170 Patent is exactly the "jungle mentality" that is "intended to be replaced, not served, by the law." *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed.Cir.1988).  Dell's scenario of economic coercion using the '170 patent is exactly the sort of abuse by large infringers against small

22

patentees that Judge Clark did not believe was proper in the hypothetical reasonable royalty negotiation, even if that went on in the real world. *Ariba, Inc. v. Emptoris, Inc.*, 567 F.Supp.2d 914, 917, n.2 (E.D. Tex. 2008). Accordingly, Defendants should be precluded from using Mr. Reed's testimony regarding any alleged effect of the '170 patent on the reasonable royalties due to Plaintiffs for infringement of the '978 patent.

GRANTED: _____     DENIED: _____

51.  **E-Book is not prior art:**

Any argument or evidence that, in the "ready for patenting" analysis for determining something's status as possible "prior art," the E-Book worked for the intended purpose of an invention other than the purpose for the ebook -- *i.e.* improperly comparing the functionality, completeness or readiness for patenting of the eBook to the alleged purpose of the invention defined in claims 16 and 17 of the '978 patent. For the prior public use or sale of a device more than a year before the filing date of a later claimed invention to constitute "prior art" under § 102(b) and § 103, the device must be ready for patenting at the time of the prior use or sale. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 66-67 (1998); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379 (Fed. Cir. 2005). Something is ready for patenting if it was (a) reduced to practice before the critical date, or (b) prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention. *Pfaff*, 525 U.S. at 66-67 (1998). To demonstrate a reduction to practice, a party must prove that the inventor "determined that the invention would work for its intended purpose." *In re Omeprazole Patent Litigation*, 536 F.3d 1361, 1373 (Fed. Cir. 2008) (citations omitted). In particular, *at the time of the prior use or sale*, the inventor(s) must have determined that *the device that was publicly used or sold* would work for its intended

purpose. *Id.* at 1373-74 (holding that the formulation alleged to be publicly used prior to the critical date of the later-patented invention was <u>not</u> reduced to practice because the evidence showed that at the time of the alleged public use, the inventors had not determined that the formulation would work for its intended purpose).

Thus, for purposes of evaluating whether or not the E-Book was reduced to practice, the proper inquiry is whether the inventor of the E-Book, Mr. Moscovitch, had determined the E-Book would work for its intended purpose at the time of the alleged public use and/or sale. The legal test is not whether the E-Book worked for the intended purpose of a later claimed invention, *i.e.* the subject matter of claims 16 and 17 of the '978 patent. To allow argument that the E-Book was ready for patenting and thus was "prior art" by comparing it to the intended purpose of a later-claimed invention would be to apply the wrong legal test. As such, it would be irrelevant and highly prejudicial and must be excluded. FRE 401-403

GRANTED: _____       DENIED: _____

52. <u>**Jerry Moscovitch's views on obviousness**</u>:   Any evidence or testimony that the invention is obvious because the inventor himself came up with it quickly or that it was obvious to him should be excluded from trial. "The issue of obviousness is determined entirely with reference to a *hypothetical* 'person having ordinary skill in the art.'...The actual inventor's skill is irrelevant to the inquiry." *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 454 (Fed.Cir.1985) (emphasis in original). "[T]he path that leads an inventor to the invention is expressly made irrelevant to patentability by statute." *Life Technologies, Inc. v. Clontech Laboratories, Inc.*, 224 F.3d 1320, 1325 (Fed. Cir. 2000); *see also* 35 U.S.C. §103(a) ("Patentability shall not be negated by the manner in which the invention was made."). Thus, any

such testimony or evidence would be contrary to law and irrelevant, and would be confusing for the jury and unfairly prejudicial. FRE 401-403.

GRANTED: _____       DENIED: _____


53.   **Any Argument or Evidence that the Intended Purpose of the E-Book Was a Purpose Other Than That of the Inventor:** This Court should exclude any argument or evidence about the intended purpose of the E-Book other than that of Jerry Moscovitch, the inventor of the eBook. Such an analysis is improper as a matter of law. Only the inventor's intended purpose is relevant to determine whether the invention was reduced to practice. *In re Omeprazole*, 536 F.3d 1361, 1373 (Fed. Cir. 2008) (citing *Z4 Technologies, Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1352 (Fed. Cir. 2007)); *see also UMC Electronics Co. v. U.S.*, 816 F.2d 647, 657 (Fed. Cir. 1987) (holding claims invalid because the items sold "had been sufficiently tested to demonstrate to the satisfaction of the inventor that the invention as ultimately claimed would work for its intended purpose").

GRANTED: _____       DENIED: _____


54.   **Arguments that the Ergotron DS100 Series stands (including the DS100 Dual Monitor Desk Stand and DS100 Quad Horizontal Desk Stand) do not infringe because a user may place the device in a "noninfringing mode" or that that the vertical tilting arrangement is a "substantial non-infringing use":** Any evidence, testimony, opinion, or argument that the Ergotron DS100 Series stands do not infringe because they may be put into a mode that allows vertical but not horizontal tilting such that, according to Defendants' argument, they are noninfringing and have a substantial non-infringing use. These arguments are contrary to law. FRE 401.

Mass' patent claims are apparatus claims. Infringement of an apparatus claim occurs "when the claimed combination has been assembled and is used *or is available for use*." *Lemelson v. United States,* 752 F.2d 1538, 1548 (Fed. Cir. 1985)(emphasis added).   It is not necessary that the accused device actually be performing the functions specified by the claim. *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001)("[A]n accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation."); *Cyrix Corp. v. Intel Corp.*, 846 F. Supp. 522, 536 (E.D. Tex. 1994), *aff'd*, 42 F.3d 1411 (Fed. Cir. 1994); *Application of Bozek,* 416 F.2d 1385, 1390 (CCPA 1969)("It seems to us that the only rational way in which 35 U.S.C. § 112 can be interpreted is to require that the 'means for performing a specified function', in order to be accorded structural significance, be a means which possesses a *presently existing* function or a *presently existing capability* to perform a function." (emphasis and deletion in original).   "All that is required is that the device have the claimed structure, and that this structure in the device have the *capability* of functioning as described by the claim." *Cyrix,* 846 F. Supp. at 536.   Moreover, "[i]f a device is designed to be altered or assembled before operation, the manufacturer may be held liable for infringement if the device, as altered or assembled, infringes a valid patent." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1556 (Fed. Cir. 1995).

Mass' apparatus claims 16 and 17 include the elements of a "means for adjusting the angular orientation of each of the displays … to thereby permit said displays to be angled toward [or relative to] each other to a desired degree." Thus, if the DS100 Series stand has structure equivalent to the structure presented in the '978 patent that permits the monitors "to be angled toward each other to a desired degree," then the combination of DS100 Series stand with monitors infringes Mass' claims even if it is capable of also being placed in a configuration that

allows vertical tilting but not horizontal and Defendants' argument is contrary to law and irrelevant. For this reason, allowing the Defendants to suggest that putting the DS100 Series stands in vertical tilting arrangement is not infringing or a that it creates a substantial non-infringing use even if the DS100 Series Stand is found infringing if put in a horizontal panning arrangement would be to make an argument that is wrong as a mater of law and thus irrelevant, and would be prejudicial and would certainly confuse the jury. Fed. R. Evid. 401, 403.

GRANTED: _____     DENIED: _____


55.   **Litigation Settlement Agreements**:  Any reference to Defendants' prior licenses and/or settlement agreements that were entered into as a result of litigation between the parties.  *See* FRE 402, 403, 408.   This motion specifically does not include Plaintiffs' licenses with companies such as Doublesight, Eizo, Peerless, and Moview, where there was no litigation between the parties.

GRANTED: _____     DENIED: _____


56.   **Any Reference or Evidence to Experts' Hours Worked or Time Billed, or Hourly Rate**:   The parties have agreed not to request the experts' bills in this case.  As such, any testimony about this subject is irrelevant and prejudicial.  FRE 401-403, 601.

GRANTED: _____     DENIED: _____


57.   **Shipping and Assembly Procedures of Infringing Products**:   Any evidence or argument about separating shipments of components that make up the alleged infringing product as being a defense to infringement.  Shipping procedures for products that have been sold is irrelevant to direct infringement because direct infringement under 35 U.S.C. § 271(a) includes

"selling" and "offering for sale" an infringing product. Defendants' argument that it does not infringe because it ships in separate containers the various components that are ultimately assembled together to make up the infringing unit was legislatively closed off with amendments to 35 U.S.C. § 271(a) to include "offers to sell." The Federal Circuit had previously closed the potential loophole of separately shipping components of an infringing product to avoid direct infringement. *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 19 (Fed.Cir. 1984) (components of a machine held to infringe when components are ready for assembly and serve "no useful noninfringing purpose"); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1556 (Fed. Cir. 1995) (*citing Paper Converting Mach. Co.*, 745 F.2d at 19). Regardless of how a product is divided for shipment, the product infringes if it was previously offered or sold as a complete unit. Accordingly, Defendants should be precluded from attempting to confuse the jury on direct infringement by introducing evidence or argument that they do not infringe because the components are shipped separately and not shipped as a complete unit. Such argument or evidence is directed to the wrong legal test. As such, it would be irrelevant and highly confusing and prejudicial and must be excluded. FRE 401-403.

GRANTED: _____     DENIED: _____

58.   **All evidence of a defective reissue from the jury:** Any evidence, testimony, opinion, or argument regarding the mistake that led to the Reissue of Mass' '978 patent being made with deceptive intent should be heard by the Court because this issue is an inequitable-conduct issue. The Federal Circuit has squarely held that subjective intent of an inventor and his attorney is irrelevant to this reissue:

> Subjective intent is not determinative of whether the applicants erred in claiming less than they had a right to claim. "Intent to claim" is not the criterion for reissue, and has been well described as "but judicial shorthand, signifying a means of measuring whether the statutorily required <u>error</u> is present." *In re Weiler*, 790 F.2d 1576, 1581, 229 USPQ

673, 676 (Fed.Cir.1986) (emphasis in original).  The statutory standard of reissuable error is objective, and does not require proof of subjective state of mind.

*Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1575 (Fed. Cir. 1991).

Rather, case after case has held that where there is a failure to claim the invention sufficiently broadly or understand the full scope of the invention, reissue is proper.  "Failure of the attorney to claim the invention sufficiently broadly 'is one of the most common sources of defects.'"  *Scripps Clinic*, 927 F.2d at 1575 (Fed. Cir. 1991) (quoting *In re Wilder*, 736 F.2d 1516 (Fed.Cir.1984)).  Indeed, *Scripps Clinic* further elaborates that "'[t]he fact that the error could have been discovered at the time of prosecution with a more thorough patentability search or with improved communication between the inventors and the attorney does not, by itself, preclude a patent owner from correcting defects through reissue.'"  *Id.* (quoting *Wilder*, 736 F.2d at 1519) (emphasis added); *In re Clement*, 131 F.3d 1464, 1468 (Fed. Cir. 1997)( "One of the most commonly asserted 'errors' in support of a broadening reissue is the failure of the patentee's attorney to appreciate the full scope of the invention during the prosecution of the original patent application . . .. This form of error has generally been accepted as sufficient to satisfy the 'error' requirement of § 251.")

The issue whether error was committed is equitable in nature and thus more appropriate for a judge rather than a jury.  *See Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1479 (Fed Cir. 1998) ("In considering the 'error' requirement, we keep in mind that the reissue statute is 'based on fundamental principles of equity and fairness'[.]").  For these reasons, allowing the Defendants to suggest that the error requirement of reissue was improper based upon Mr. Waraksa or Mr. Moscovitch's intent would be contrary to law and irrelevant, and would be unduly prejudicial and would certainly confuse the jury. Fed. R. Evid. 401, 403.

Finally, as discussed in more detail in Plaintiffs' Response to Ergotron's Summary Judgment Motion for Invalidity, see Docket No. 494, a reissue application is proper if the

attorney failed to appreciate the scope of the claim.   Here, Mr. Moscovitch's attorney Mirek

Waraksa specifically stated that he failed to appreciate the scope of the claims.   Therefore, there

is no factual dispute about any deceptive reissue, and for this reason alone, this Court should not

allow a jury to hear these arguments, especially considering the risk of undue prejudice to

MASS. *See* Fed. R. Evid. 401, 403.

GRANTED: _____       DENIED: _____

Respectfully submitted,

/s/ Justin A. Nelson _____
Max L. Tribble, Jr., State Bar No. 20213950
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile:  (713) 654-6666
mtribble@susmangodfrey.com

Lead Attorney for Jerry Moscovitch and
MASS Engineered Design, Inc.

OF COUNSEL:

Justin A. Nelson, State Bar No. 24034766
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone: (206) 516-3880
Facsimile:  (206) 516-3883
jnselson@susmangodfrey.com

Stephen F. Schlather, State Bar No. 24007993
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile:  (713) 654-6666
sschlather@susmangodfrey.com

Otis W. Carroll
State Bar No. 03895700
**IRELAND, CARROLL & KELLEY, P.C.**
6101 S. Broadway, Suite 500
P. O. Box 7879
Tyler, Texas 75711
Telephone:  (903) 561-1600
Facsimile:  (903) 561-1071
nancy@icklaw.com

Franklin Jones, Jr., State Bar No. 00000055
**JONES & JONES, INC., P.C.**
201 West Houston Street
P. O. Drawer 1249
Marshall, Texas 75671-1249
Telephone:  (903) 938-4395
Facsimile:  (903) 938-3360
maizieh@millerfirm.com

Gregory L. Maag, State Bar No. 12748500
Jonathan M. Harris, State Bar No. 00796713
**CONLEY ROSE, P.C.**
600 Travis Street, Suite 7100
Houston, Texas 77002
Telephone:  (713) 238-8000
Facsimile:  (713) 238-8088
gmaag@conleyrose.com
jharris@conleyrose.com

S. Calvin Capshaw, State Bar No. 03783900
Elizabeth L. DeRieux, State Bar No. 05770585
**CAPSHAW DERIEUX, LLP**
1127 Judson Road, Suite 220
P. O. Box 3999
Longview, Texas 75601-5157
Telephone:  (903) 236-9800
Facsimile:  (903) 236-8787
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Robert M. Parker, State Bar No. 15498000
Christopher Bunt, State Bar No. 00787165
Charles Ainsworth, State Bar No. 00783521
**PARKER, BUNT & AINSWORTH, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas  75702
Telephone:  (903) 531-3535
rmparker@pbatyler.com

rcbunt@pbatyler.com
charley@pbatyler.com

Attorneys for Jerry Moscovitch and
MASS Engineered Design, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this 20th day of October, 2008 with a copy of this document via the Court's CM/ECF system per Local Rule CD-5(a)(3).

/s/ Justin A. Nelson
Justin A. Nelson