IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MASS ENGINEERED DESIGN, INC., And JERRY MOSCOVITCH, | § § § § § § § § § § § § § § § § § § | |
| Plaintiffs, Counter - defendants, Cross-claimants, | | CASE NO. 2:06 CV 272 PATENT CASE |
| vs. | | |
| ERGOTRON, INC., *et. al.*, | | |
| Defendants, Counterclaimants | | |
| and | | |
| DELL MARKETING L.P., | | |
| Intervenor - Defendant, Counterclaimant | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Mass Engineered Design Inc.'s ("Mass") Motion to Compel Interview Notes of Mirek Waraksa (Docket No. 466). Having considered the parties' written submissions and oral arguments, the Court **GRANTS** the motion.

### BACKGROUND

This suit involves U.S. patent RE 36,978 ("'978 patent"), a reissue of U.S. patent 5,687,939 ("'939 patent"). As set forth in the Court's September 14th Order, in early 1996, Plaintiff Jerry Moscovitch retained Canadian attorney and U.S. patent agent Mirek Waraksa in order to prosecute what would become the '939 patent. After the patent issued, Moscovitch discovered that key features of the invention were not included within the scope of the patent. Thereafter, Moscovitch

1

retained alternative counsel, and his relationship with Waraksa degraded quickly. With the aid of his new attorneys, Moscovitch successfully prosecuted a reissue application, which eventually issued as the '978 patent on December 5, 2000. The patent was subsequently exclusively assigned to Moscovitch's company, Mass.

On July 7, 2006, Moscovitch and Mass filed a complaint against Defendants alleging various theories of patent infringement. During discovery, Defendant Ergotron sought to compel disclosure of certain confidential communications between Moscovitch and Waraksa arguing that privilege had been waived because the communications had been revealed to the U.S. Patent and Trademark Office) in connection with the reissue application. On March 19, 2008 the Court granted Ergotron's motion to compel and held that privilege was waived as to "all issues relating to claim scope believed available" up to the date of the reissue. Importantly, the Order specifically addressed Mass's concerns that many of the communications related to possible divisional applications and not the scope of the patents that actually issued. The Order specified that "[t]he waiver does not include discussions of possible divisional patents as that goes to neither the claim scope of the '939 patent nor the '978 patent."

After the March 19th Order, Ergotron sought to depose Waraksa. Over the course of the litigation it became clear that Waraksa was hostile to Moscovitch. As a precaution, Mass and Moscovitch secured Waraksa's agreement, in October 2007, that he would not discuss his representation of Moscovitch or Mass without contacting them first. Regardless, Waraksa met numerous times with Ergotron's counsel without the presence Mass's attorneys. Waraksa and defense counsel seemed to be in continuous communication prior to Waraksa's deposition on June 9, 2008. Shortly after the deposition was noticed, Mass sent a letter to Waraksa reminding him that

communications between he and Moscovitch were privileged and he was not authorized to speak to defense counsel outside the presence of Mass's attorneys.

On April 15, 2008, three of Ergotron's attorneys met with Waraksa without Mass present. The attorneys' notes from the meeting are the subject of Mass's motion. After Plaintiffs' counsel learned of the meeting, they asked to be included in any subsequent communications with Waraksa. Ergotron's attorneys responded that they had no obligation to include Plaintiffs' counsel in any subsequent meetings because Mass's attorneys did not and could not (presumably because of his adverse relationship with Moscovitch) represent Waraksa. Plaintiffs' Motion to Compel Interview Notes Ex. 8 (Docket No. 466).

Days before Waraksa's deposition, on May 29, 2008 Mass again sent a letter to Waraksa warning him that an appearance at a U.S. deposition without express permission by his former client or an order from a Canadian court would breach his Canadian duty of attorney-client confidence. Waraksa forwarded the letter to Ergotron's attorneys. On June 4th 2008, after a conference with Ergotron, Mass informed Waraksa that he could attend a deposition but that Mass would pursue all "sanctions and remedies" if Waraksa revealed privileged information. During Waraksa's deposition Waraksa continuously attempted to speak about conversations he had with Moscovitch concerning divisional applications. Mass objected to these references, but Ergotron continued to ask questions that Waraksa answered with privileged information.

On August 15, Ergotron filed its second Motion to Compel requesting sanctions against Mass for sending the numerous letters to Waraksa and objecting continuously during Waraksa's deposition. The Court's October 14th Order denying Ergotron's motion for sanctions recognized that Mass was correct in protecting its privilege and reminded Ergotron of "its ethical duty to respect

the legal rights and privileges of its adversaries while conducting discovery." Memorandum Opinion and Order, Docket No. 528 at 12 (October 14, 2008). Mass now seeks to compel the production of the attorneys' interview notes taken during Ergotron's April 15, 2008 meeting with Waraksa. After the Court's *in camera* inspection of these documents and for the reasons discussed below, Mass's motion is **GRANTED**.

**APPLICABLE LAW & ANALYSIS**

*Work-Product Classification*

As a preliminary matter, Mass argues that the notes are discoverable work-product and are therefore discoverable in cases of "substantial need" and "undue hardship." Ergotron asserts that the notes reveal the mental impressions of its attorneys and are therefore never discoverable. The work product doctrine has been codified as Federal Rule of Civil Procedure 26(b)(3). Generally, materials prepared in anticipation of litigation by attorneys is discoverable only upon a showing of "substantial need" and "undue hardship." FED. R. CIV. PROC. 23(b)(3). However, "mental impressions, conclusions, opinions, or legal theories of an attorney" are absolutely privileged and are not discoverable. *Nguyen v. Excel Corp.*, 197 F.3d 200, 210 (5th Cir. 1999) ("'An attorney's thoughts [are] inviolate . . . .' Even though an attorney's mental impressions and opinions fall outside of the attorney-client privilege, they also 'fall[ ] outside the arena of discovery [as their disclosure would] contravene[ ] the public policy underlying the orderly prosecution and defense of legal claims.'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)).

Notes taken by an attorney of a third-party witness has elements of both discoverable work-product and non-discoverable work-product. The Supreme Court has held that documents prepared by an attorney from oral statements of a witness certainly require more than "substantial need" and

4

"undue hardship" for production to be warranted. *Upjohn v. U.S.*, 449 U.S. 383, 401 (1981). Neither the Court in *Upjohn* nor the Fifth Circuit has addressed the particular standard required for disclosure of attorney's witness notes. *Id.*

After reviewing the April 15th notes *in camera*, it is clear that they are not simply a word-for-word transcript of the meeting. The selection of information contained in the notes and certainly the hand-written notes commenting on Waraksa's oral statements constitute mental impressions. The notes are properly classified as non-discoverable work product. However, because of the conduct of Ergotron's counsel in dealing with Mass's former-now-adverse attorney, production of the notes is warranted as a sanction.

*Sanctions*

Courts are given discretion under Federal Rule of Civil Procedure 37(b) and their inherent powers to impose sanctions for discovery abuse. *See, e.g., Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1033 n.2 (5th Cir.1990); *Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 952 (5th Cir. 2001). Under both Rule 37(b) and when wielding its inherent power a court must apply its sanction power in order to do justice. *B.F. Goodrich Tire Co. v. Lyster*, 328 F.2d 411, 415-16 (5th Cir. 1964) (regarding Rule 37, "In the final analysis, a court has a responsibility to do justice between man and man . . . ."); *see Toon*, 250 F.3d at 952 (holding that sanctions under a court's inherent power should be imposed where there is bad faith and where the Federal Rules are inapplicable). "Rule 37 sanctions may be applied both to penalize conduct that warrants sanctions and to deter those who might be tempted to such conduct in the absence of such a deterrent." *CSI Inv. Partners II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 435 (S.D.N.Y. 2007) (internal quotation marks omitted). Specifically, when ethical rules are violated, the Court has a duty to impose appropriate sanctions.

5

*See Mylett v. Jeanne*, 910 F.2d 296, 301 (5th Cir. 1990) (characterizing defense counsel's attempt to solicit plaintiff's counsel to breach fiduciary duties toward his client as a "serious charge" and requiring the trial court to "take appropriate action"). The remedies provided for in Rule 37(b) are not exclusive, nor should they be arbitrary. *Guidry v. Cont'l Oil Co.*, 640 F.2d 523, 533 (5th Cir. 1981). In other words, when discovery abuse occurs, the Court's punishment must fit the crime. *Id.*

Before the April 15 meeting, Ergotron had ample notice that Waraksa had been Mass's Canadian attorney. In fact, Ergotron sought to depose Waraksa, at least partially, as a response to the March 19 finding that Mass had partially waived its privilege. *See* Plaintiffs' Response to Ergotron's Second Motion to Compel Ex. 11 (Docket No. 378). Ergotron's attorneys even sent Waraksa a copy of the Court's March 19 Order prior to the April 15 interview. During the hearing, Ergotron explained that this was part of their efforts to protect Mass's remaining privilege. To the contrary, Ergotron's attorneys were already aware that Waraksa had become adverse to Mass and Moscovitch and willing to speak freely concerning privileged information. It was Ergotron's counsel's duty not to solicit, either directly or indirectly, privileged information from Waraksa. This duty could not be avoided by relying on Waraksa (regardless of the fact that he was a Canadian attorney) to read and interpret the Court's Order.

The Eastern District has adopted the Texas Rules of Professional Conduct. LOCAL RULE AT-2(a). However, a district court is not bound only by the State's ethical rules and may look to national standards of professional responsibility such as the ABA Model Rules to fashion its ethical standards. *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992). Both the Texas rules and the Model rules prohibit an attorney from ever revealing confidential information to the disadvantage of the client or to anyone else other than the client. TEX. DISCIPLINARY R. PROF'L CONDUCT

1.05(b)(1)-(2); MODEL RULES OF PROF'L CONDUCT R. 1.6. Further, it is a violation of the rules to "knowingly assist or induce another" to violate the ethical rules. TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04(a)(1); MODEL RULES OF PROF'L CONDUCT R. 8.4(a). Given Waraksa's adversity to Mass at the time of the interview, Mass's clear wishes to be present during interviews with Waraksa, and the fact that Waraksa's privileged communication with Moscovitch would be inextricably intermingled with the communications no longer privileged, Ergotron's April 15 interview was conducted, at least, with reckless disregard to Mass's privilege.[1]

While the attorneys' notes from the April 15 meeting with Waraksa are incomplete, jumbled, and perhaps open to interpretation, the notes clearly indicate that some privileged information was discussed. There are multiple references to "divisional" applications as well as a "ball and socket" feature expressly excluded from the Court's March 19 finding of waiver. However, because of the fragmentary nature of the notes, it is impossible for the Court to establish the true extent that Mass's privileged material was revealed. For this reason, and because of the poor judgment exercised by Ergotron's attorneys in eliciting this material, Ergotron is required to produce the notes in their entirety.

## CONCLUSION

For the aforementioned reasons the Court **GRANTS** Mass's Motion to Compel and Ergotron is **ORDERED** to immediately produce the attorney interview notes taken during the April 15, 2008 meeting with Mirek Waraksa.

---

[1] While Ergotron's counsel used extremely poor judgment in deciding to interview Waraksa without the presence of Mass, the record is too incomplete to make a conclusive finding of bad faith. The remedy provided for herein gives little advantage to either Plaintiff or Defendant on the merits of the case. The April 15 notes appear to have little relevance to any central issues in the case, and to the extent they are relevant their admissibility will be dealt with at the time of trial. Given the consistently contentious nature of this suit, the Court cautions both sides to tread with care.

7

**So ORDERED and SIGNED this 31st day of October, 2008.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**